Rogelia Caballero, demandante y apelante, *v.* Eduardo González, demandado y apelado.

Núm. 7538.—*Sometido:* Junio 21, 1938. *Resuelto:* Julio 13, 1938.

*A. Casanova Prats* y *J. J. Fuertes,* abogados de la apelante; el demandado no compareció.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

Rogelia Caballero radicó demanda de divorcio contra su esposo Eduardo González en la Corte de Distrito de San Juan el 22 de septiembre de 1936. Alegó la demandante que había residido más de un año en Puerto Rico con antelación a la radicación de la demanda. No compareció el demandado a pesar de haberse dado por notificado el 3 de octubre de 1936. El 17 de noviembre siguiente la demandante solicitó la anotación de rebeldía, que obtuvo diez días después.

Se celebró el juicio oral el 15 de enero de 1937. Hallándose la demandante en los Estados Unidos para esa fecha, se leyó su deposición, que había sido tomada de acuerdo con la ley ante el Comisionado de Escrituras de Puerto Rico en Nueva York, Sr. Anthony E. Cardona. En la demanda se alegó que en la fecha de su radicación hacía más de un año que la demandante residía en Puerto Rico y sosteniendo esa alegación aparece en la deposición de la demandante el siguiente interrogatorio:

"P. ¿En qué fecha entabló la demanda de divorcio por abandono?

"R. El día 22 de septiembre de 1936.

"P. Al radicar la demanda de divorcio por abandono, ¿residía usted en Puerto Rico? ¿En qué lugar?

"R. Sí, residía en Río Piedras, pero las dos últimas semanas de mi salida para esta ciudad, residía en el barrio de Santurce de la ciudad de San Juan, P. R.

"P. ¿Cuánto tiempo antes de la radicación de dicha demanda de divorcio por abandono vivía usted en la isla de Puerto Rico, y en qué sitio o lugar?

"R. Residí en Río Piedras, exceptuando las dos últimas semanas de mi salida que fueron en Santurce, unos catorce meses antes de la radicación de la demanda, o sea de julio de 1935 hasta octubre de 1936."

Más adelante, en el curso de la deposición, vuelve la testigo a declarar en la siguiente forma:

"P. Usted ha manifestado que después de ser abandonada por su esposo, en agosto de 1934, Ud. permaneció en la ciudad de Nueva York por ocho o nueve meses más, y que fué durante este tiempo que Ud. hizo las gestiones para conseguir que su esposo regresara al hogar y ha manifestado asimismo que hacía como cuatro meses que Ud. residía en Puerto Rico cuando Ud. radicó la demanda de divorcio por abandono en el caso de epígrafe?

"R. Sí, y residí en Puerto Rico desde julio 1, 1935, hasta octubre de 1936.

"P. ¿En qué fecha embarcó Ud. en Nueva York, y en qué fecha llegó usted a Puerto Rico?

"R. Embarqué a mediados del mes de julio de 1935 de Nueva York y llegué a Puerto Rico a fines del mismo mes de julio de 1935.

"P. Diga las razones por las cuales Ud. embarcó nuevamente de Puerto Rico para la ciudad de Nueva York, y la fecha en que embarcó para dicha ciudad.

"R. Yo pensaba quedarme en Puerto Rico porque la situación en los Estados Unidos estaba mala y era difícil conseguir trabajo, pero al recibir una carta de mi hermano donde me decía me había encontrado un trabajo, embarqué inmediatamente hacia la ciudad de Nueva York donde está mi hermano, embarcando para esa ciudad a fines de octubre de 1936.

". . .

"P. Diga en qué vapor y cuándo salió Ud. la última vez de Puerto Rico.

"R. Embarqué en un barco de carga perteneciente a la Bull Insular Line el día 31 de octubre de 1936, pero no recuerdo el nombre de dicho barco."

Las preguntas y respuestas que preceden es lo único que aparece en la deposición de la demandante con respecto a su residencia en Puerto Rico con anterioridad a la radicación de la demanda. Aunque en una de las preguntas el Comisionado de Escrituras pone en boca de la testigo el haber dicho

antes que hacía cuatro meses que ella residía en Puerto Rico cuando radicó la demanda, esa manifestación es errónea, pues hemos examinado toda la deposición y en ninguna parte de la misma se afirma tal cosa.

La deposición de la demandante sobre el extremo indicado fué corroborada por la testigo Ismencia Solís, que declaró en el juicio oral.

Resulta también de la evidencia no controvertida de la demandante que el demandado la abandonó en julio o agosto de 1934, y habiéndose radicado la demanda el 22 de septiembre de 1936, hacía más de un año que el demandado había abandonado a la demandante. A pesar de esta evidencia no controvertida en forma alguna, la corte inferior desestimó la demanda y como fundamentos de su sentencia expresó:

"La corte no está convencida, porque no hay prueba suficiente para ello, de que realmente la actora haya residido en Puerto Rico durante el tiempo que señala el inciso segundo del artículo 97 del Código Civil. Más bien cree el tribunal que la demandante hizo un viaje rápido a Puerto Rico para dejar radicada su demanda y entonces volver de nuevo a New York. No hay una sola alegación firmada por ella. Su deposición no nos convence, por no ser explícita, en cuanto a la fecha de su arribo a Puerto Rico, y menos en cuanto a su salida de la isla."

Apeló la demandante y, de acuerdo con la regla cuarta del reglamento de este tribunal, se dió traslado del caso al fiscal de esta corte para que en el término de diez días presentase el informe correspondiente. En su informe el fiscal se expresó en los siguientes términos:

"La única cuestión a resolver es si tuvo la corte inferior ante sí prueba suficiente que demostrara que la demandante residió en la isla un año inmediatamente antes de radicar la demanda.

"Creemos sinceramente que la deposición de la demandante es clara sobre dicho extremo, y su testimonio no ha sido contradicho en forma alguna; y lo mismo podemos decir sobre el testimonio de Ismencia Solís.

"La corte inferior basa su creencia de que la demandante no residió el año jurisdiccional en Puerto Rico y que por el contrario

hizo un viaje rápido a Puerto Rico para dejar radicada su demanda y entonces volver de nuevo a New York, en los siguientes fundamentos:

"1. En no existir una sola alegación firmada por ella;

"2. En no ser su deposición explícita en cuanto a la fecha de su arribo a Puerto Rico y menos en cuanto a su salida. (T. A. pág. 3)

"En cuanto al primer extremo, la única y esencial alegación de la demandante en este caso, es la demanda, y la misma está firmada por su abogado, sin que exista en Puerto Rico ley alguna que imponga a la demandante la obligación de firmar personalmente dicha demanda. Basta que la firme su abogado.

"En cuanto al segundo extremo, creemos que la deposición de la demandante es suficientemente explícita en cuanto a establecer el hecho de que llegó a Puerto Rico a fines de julio de 1935, y permaneció en la isla hasta octubre de 1936; aseveración que corroboró con su testimonio la testigo Ismencia Solís.

"No se trata, pues, de dirimir un conflicto de prueba contradictoria, en que el juez que preside la vista tiene amplia discreción para resolverlo, según su criterio, el que se sostendrá en apelación a menos que se demuestre pasión, prejuicio o parcialidad o un manifiesto error. Aquí no existe conflicto alguno de prueba. Frente a las manifestaciones claras y terminantes de una y otra testigos, en cuanto al tiempo en que la demandante residió en Puerto Rico con anterioridad a la radicación de su demanda, o sea, desde fines de julio de 1935 hasta octubre de 1936, no existe ningún otro testimonio en contrario ni otra base alguna para poder destruir la prueba de la demandante sobre ningún extremo de su declaración."

En el caso de *Quock Ting* v. *U. S.*, 140 U. S. 417, 35 L. Ed. 501, el Juez Field, refiriéndose al crédito que debe merecer un testigo cuya declaración no ha sido controvertida en manera alguna, dice:

"Indudablemente como regla general el testimonio positivo no controvertido sobre un hecho determinado debe controlar la decisión de la corte; esta regla, sin embargo, admite muchas excepciones. Puede existir tal improbabilidad en las aseveraciones de un testigo que induzca a la corte o al jurado a descartar su evidencia, aunque no haya testimonio alguno en contrario. El testigo puede contradecirse por sus propias manifestaciones tan eficazmente como si se presentara prueba en contrario; las muchas omisiones en su re-

lato de determinadas transacciones y aún su propia conducta, pueden ser suficientes para desacreditar toda su declaración. Su manera de declarar también puede dar lugar a dudas sobre su sinceridad y dar la impresión de que está imprimiendo un colorido falso a hechos esenciales. Todas estas circunstancias pueden ser consideradas al determinar el peso probatorio que debe darse a su declaración, a pesar de que no se haya presentado testimonio alguno que lo contradiga.''

En nuestra propia jurisprudencia tenemos un caso que ilustra perfectamente la cuestión. Es el de *Velázquez* v. *Sucesión Blanco,* 50 D.P.R. 294. En ese caso el juez sentenciador, que lo fué el que suscribe, al declarar sin lugar la demanda se expresó en los siguientes términos:

''El demandante trató de probar cómo había adquirido estos pagarés pero su declaración es tan inverosímil, incurrió en tantas contradicciones, y su manera de declarar fué tan deficiente, que tenemos la seguridad absoluta de que el demandante, a pesar de que es el tenedor de las obligaciones, no es el dueño de las mismas.

''Basta leer su declaración para darse cuenta inmediatamente de lo inverosímil de la historia que hace en relación con la forma en que adquirió estos documentos.

''De la prueba aparece que don Juan B. Blanco vivía en concubinato con una señora con quien sus hijos no tenían relación alguna, y que fué en los momentos de su muerte cuando llamó a su hijo Juan, quien no pudo o no se hizo cargo de los documentos de su padre que estaban bajo la custodia o el cuidado de la concubina que lo acompañaba.

''Estamos convencidos, como antes hemos dicho, de que el demandante no es dueño de estos pagarés, y nuestra conciencia se resiste a dictar una sentencia en este caso a favor del demandante, a pesar de que los documentos se hallan en su poder.''

El apelante en dicho caso imputó a la corte, entre otros, el error de haber desestimado la demanda basándose en escrúpulos de conciencia y no en los méritos de las alegaciones y de las pruebas, desconociéndose así los derechos del demandante como portador y dueño de dos pagarés traspasados de buena fe por valor recibido antes de su vencimiento.

Al discutir el señalamiento de error antes indicado, este tribunal, por voz de su Juez Asociado señor Travieso dijo:

"La resolución del primer error señalado no ofrece dificultad alguna. Los párrafos de la opinión de la corte inferior que hemos transcrito revelan claramente que la sentencia no está basada en meros escrúpulos de conciencia del juez sentenciador, sino en una cuidadosa apreciación y aquilatación del testimonio dado por el propio demandante, para sostener su derecho al cobro de los pagarés. El juez que presidió la vista y ante el cual depuso el demandante, tuvo la oportunidad, que no puede tener esta corte, de ver al demandante en persona, de observar su manera de declarar, de oír y ver brotar de sus labios las contradicciones y de ir formando gradualmente en su conciencia la convicción de que el demandante no tenía derecho a la sentencia que solicitaba. Un juez, que después de oír la historia que le hace un demandante, la cree inverosímil; que observa la actitud y manera de declarar de ese demandante y la encuentra deficiente; y que nota las numerosas e inexplicables contradicciones en que incurre en su declaración, tendría realmente que violentar su conciencia para poder dictar una sentencia favorable a ese demandante.

"Es al juez sentenciador a quien la ley concede la facultad de apreciar la prueba y de juzgar acerca de la credibilidad de los testigos. Y no puede ni debe el tribunal de apelación revocar un fallo, por supuestos errores en la apreciación de la evidencia, a menos que se alegare y probare o de los autos resultare evidente que el juez había actuado movido por pasión, prejuicio o parcialidad o que había incurrido en error manifiesto. Y en este caso no se ha alegado ninguna de esas causas de revocación.

"Del resumen de la prueba que aparece en la exposición del caso, no surge el convencimiento de que la corte inferior haya errado al apreciarla. Surge más bien la inverosimilitud del relato que hace el demandante, para sostener que es no sólo tenedor, sino también dueño de los pagarés. Se hace difícil creer que un hombre que ha quebrado en el comercio, empiece poco tiempo después a hacer préstamos a otra persona, durante un período de dos o tres años sin obtener del prestatario recibos por las sumas prestadas; que se hagan esos préstamos a una persona que ya debe al prestamista una suma considerable por comisiones de ventas; y por último, que el deudor de esos préstamos y comisiones, por un total de $5,300, sin que su amigo le haya apremiado para que le pague, la haya entregado a su

acreedor dos pagarés hipotecarios de un valor total al vencimiento de $14,800, pocos días antes del vencimiento de esas obligaciones. No nos sorprende que la conciencia del juez sentenciador se haya resistido a dar crédito a las declaraciones del demandante y de su alegado cedente Gregorio Cubero.''

En el caso que ahora nos ocupa, el juez de la corte inferior no tuvo base alguna para dudar de la declaración de la demandante. No la vió ni oyó declarar, pues como hemos visto, declaró por deposición. Su declaración es perfectamente compatible con la verdad y sus contestaciones son terminantes, categóricas, precisas y libres de evasivas. La creencia de la corte de que la demandante hizo un rápido viaje a Puerto Rico para dejar radicada la demanda y entonces volver de nuevo a Nueva York, es una mera conjetura no justificada por la evidencia. [2] Tampoco puede afectar la credibilidad de la demandante el hecho de que no haya jurado ella la demanda. La juró su abogado y esto era suficiente.

Por lo expuesto, forzoso es concluir que la corte inferior cometió manifiesto error al descartar la deposición de la demandante y la declaración de la testigo Ismencia Solís. Dándole el crédito que a sus testimonios debe dárseles de acuerdo con la ley, *procede en este caso revocar la sentencia apelada y en su lugar dictar otra que declare con lugar la demanda y consiguientemente roto y disuelto el vínculo matrimonial por la causa de abandono del marido a la mujer, concediendo a ésta la patria potestad sobre sus dos hijas Olga y Carmen González Caballero, de doce y nueve años de edad respectivamente, sin entrar a regular por ahora las relaciones de familia por residir las partes fuera de Puerto Rico, imponiéndose al demandado las costas causadas en la corte inferior, sin incluir, desde luego, honorarios de abogado.*