María Planellas Díaz, asistida y con el concurso de su marido Mauricio Verdejo, demandante y apelante, *v.* Sucesión Intestada de Manuel Planellas Muñoz, su viuda María Tula Pastrana y su hijo adoptivo Ismael Planellas Pastrana, demandados y apelados.

Núm. 8195.—*Sometido:* Junio 12, 1941. *Resuelto:* Julio 29, 1941.

*Samuel R. Quiñones,* abogado de la apelante; *Luis Muñoz Morales,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR TOLD, JR., emitió la opinión del tribunal.

Se trata de una acción de filiación. La demanda original en este caso se radicó en la Corte de Distrito de San Juan casi doce años atrás o sea el 28 de agosto de 1929. No sabemos por qué motivos no fué hasta el 3 de noviembre de 1938 que se radicó la segunda demanda enmendada en la que la demandante María Planellas Díaz alega, en síntesis, que Manuel Planellas Muñoz, causante de la sucesión demandada que componen María Tula Pastrana e Ismael Planellas Pastrana, falleció en la ciudad de San Juan, el día 19 de febrero de 1929, sin otorgar disposición testamentaria de clase alguna, habiéndole sobrevivido su esposa la señora Pastrana y su hijo adoptivo Ismael Planellas, y su hija natural reconocida, María Planellas Díaz; que allá por el año 1888 y 1889, su padre natural, Manuel Planellas Muñoz, sostuvo relaciones amorosas con la madre natural de la demandante, llamada Eduvigis Díaz, residentes ambos en aquella fecha en el pueblo de Cayey, Puerto Rico; que los expresados padres naturales de la demandante, Manuel Planellas y Muñoz y Eduvigis Díaz, en aquella fecha eran solteros y no tenían im-

pedimento de clase alguna para poder contraer matrimonio, y que como producto de tales relaciones tuvieron una sola hija, que es la demandante, María Planellas Díaz, que nació en el citado pueblo de Cayey el día 11 de septiembre de 1889; que el padre natural de la demandante, Manuel Planellas Muñoz, durante el tiempo transcurrido desde el año 1889, en que tuvo lugar el nacimiento de la aquí demandante María Planellas Díaz, hasta la fecha en que falleció, tuvo a dicha demandante por su hija ocupándose de su sostenimiento y educación, dándole su nombre en público y en conversaciones privadas con sus amigos incluso los demandados; que la demandante durante todo el tiempo de su niñez y la adolescencia vivió siempre en compañía de su citado padre natural, Manuel Planellas Muñoz y éste la llevaba siempre consigo, atendiendo a su sostenimiento y educación, haciendo constar que era su hija y otorgándole el derecho a llevar su apellido; que la demandante continuó viviendo en compañía de su padre, después de éste haber contraído matrimonio con la aquí demandada, María Tula Pastrana, el primero de abril de 1892, y la llevó a vivir a su hogar bajo el cuidado de su citada esposa y como hija suya; que el día primero de marzo de 1912, la demandante, con el consentimiento expreso de su padre natural, Manuel Planellas, contrajo matrimonio con Mauricio Verdejo, consignándose con el conocimiento y consentimiento de su padre, en el acta de matrimonio, que la demandante era hija natural reconocida de Manuel Planellas Muñoz; que la demandante continuó siempre en sus relaciones de familia con su citado padre, éste la ayudaba constantemente, llamando y conceptuando como sus nietos a los hijos de la demandante; que la demandante, hasta la fecha de la muerte de su padre natural Manuel Planellas Muñoz, estuvo siempre en la posesión continua del estado de hija natural del referido Manuel Planellas Muñoz, conservando siempre, sin interrupción alguna, sus relaciones de familia y ostentando el apellido de su padre natural constantemente, con el conocimiento y con-

sentimiento del mismo. Solicita la demandante sentencia que la declare hija natural reconocida de Manuel Planellas Díaz.

Los demandados en su contestación negaron todos los hechos esenciales alegados en la demanda y como defensa alegaron lo siguiente:

"1. Que en los años 1888 y 1889, el causante Manuel Planellas Muñoz se encontraba estudiando en los Estados Unidos.

"2. Que la demandante estuvo en dos ocasiones en la casa del causante y de su esposa la demandada María Tula Pastrana, en concepto de recogida y de sirvienta; pero nunca estuvo allí tratada ni considerada como hija del causante Manuel Planellas."

De la sentencia que declaró sin lugar la demanda apela la demandante y alega que la corte inferior cometió error al declarar que la prueba no sostiene las alegaciones de la demanda, al apreciar la prueba y al admitir en evidencia el testimonio de la demandada María Tula Pastrana Vda. de Planellas. Refiriéndose los dos primeros a la apreciación que de la prueba hizo la corte inferior, forzoso es que hagamos una síntesis de la misma, según aparece en las 400 páginas que abarca la transcripción de la evidencia.

Consistió la de la demandante en la declaración de los testigos Eustaquia Vázquez, Sotero Colón, Regino Rivera, Epifania Díaz, Hilaria Rivera, Ramona González, Matías Hernández, Francisco Nieves, Antonio Negrón, Mauricio Verdejo y en la suya propia.

Eustaquia Vázquez declara que tiene 75 años de edad; que ha vivido en Cayey toda su vida, y específicamente de 1887 a 1890; que conocía íntimamente a Manuel Planellas y a Eduvigis Díaz, que tenían relaciones y María Planellas es el fruto de esas relaciones; que María nació en o alrededor de la fecha de la muerte de Baldorioty de Castro; que se recuerda bien porque su marido, Pepe Mercado, el poeta Momo, que salió para el entierro de Baldorioty se le "embriscó" y no volvió más; que la familia de Planellas se oponía a las relaciones entre Eduvigis y él, porque ella era de color y él un poquito blanco, y que con motivo de esa opo-

sición "lo sacaron del pueblo" y cuando la niña nació él no estaba en Cayey; que él le escribía de los Estados Unidos y le mandaba dinero a Eduvigis; que ella (la testigo) se encargó por encomienda de Planellas de mandar a buscar la comadrona cuando Eduvigis estuvo de parto, y también de pagarle sus honorarios; que la comadrona, Petrona Noguera, había fallecido; que volvió a ver a Planellas, cuando éste vino a buscar a la niña a Cayey, después de la muerte de la madre y de una tía que la cuidaban; que Planellas mientras ella vivía le hacía regalos y pagaba el cuido de la niña; que cuando murió la tía ella se lo escribió y él fué a buscar la niña y ella se la entregó; que tiene otro dato para fijar la fecha del nacimiento de María, y es que su propio hijo nació en el año 1885, como cuatro años antes que María Planellas; que Planellas se fué de Cayey dos veces y fué la segunda vez que dejó encinta a Eduvigis y le escribía de Estados Unidos. En el contrainterrogatorio declaró que Planellas trabajaba de dependiente con don Manuel Muñoz Callá; que Planellas visitaba a Eduvigis y los veía porque ella era amiga inseparable de Eduvigis; que ésta trabajaba en casa de los Díaz; que la primera vez que Planellas se fué para Estados Unidos no le escribía sino cuando ya tenía las relaciones con Eduvigis y al quedar ésta encinta; que Planellas se marchó para Estados Unidos y no vió a su hija hasta que tuvo tres años; que cuando nació la muchacha Planellas estaba en los Estados Unidos; que Planellas tenía de 20 a 22 años para la época de sus relaciones con Eduvigis Díaz y ésta de 30 a 35; que Planellas le decía que estaba loco con su negrita y la quería; que cuando fué a buscar a la niña fué de noche en coche y ella misma se la entregó.

Sotero Colón declara que tiene 75 ó 76 años; que era amigo íntimo de Manuel Planellas; que en los años 1888 y 1889 Planellas y él estaban ambos en Cayey; que Planellas tuvo relaciones amorosas con Eduvigis Díaz, de las cuales nació María Planellas, la demandante, la cual él vió 15 ó 20

días después de haber nacido; que Planellas le cogió una
casa a Eduvigis por la salida de Cidra y allí fué que ella
salió encinta y luego la pasó a otra casa frente a la pana-
dería adonde la visitaba pues se quería con ella; que iba a
la casa y se quedaba allí y "ahí está el retrato" (supone-
mos que el testigo se refiere a la demandante) que Eduvigis
le pidió (al testigo) que inscribiera la niña pero que nunca
lo hizo.  Al preguntarle el juez si tenía una memoria tan fide-
digna, contestó "pero es que cuando las cosas son verdad no
se olvidan"; que después de nacer la niña, no volvió a ver
a Planellas hasta dos años después, cuando éste regresó a
Cayey a buscar a su hija; que para la época del parto de
Eduvigis, ya no veía a Planellas en Cayey; que cuando Pla-
nellas fué a buscar su hija a Cayey, iba solo en un quitrín,
y al verle parado en una esquina lo saludó y le dijo: "So-
tero, ¿qué hay?", respondiéndole él, "qué hay, don Plane-
llas", y Planellas contestando entonces dijo "yo vengo a
buscar la hija mía" y siguió camino.

Regino Rivera declara que tiene ochenta años de edad y
que vive en Trujillo Alto desde que nació; que conoció a
Manuel Planellas y conoce a la demandada Tula Pastrana y
a la demandante a quien "intitulaban" la niña María Pla-
nellas cuyo padre era Manuel Planellas; que recuerda cuando
Planellas fué a Cayey a buscar a la niña María Planellas;
que Planellas alquiló en el pueblo una calesa para ir a Ca-
yey, y a la vuelta, cuando traía a la niña le dijo (al testigo)
"mi negro, aquí está mi niña"; que cuando Planellas trajo
a la niña de Cayey, todavía no se había casado con Tula
Pastrana y lo hizo seis u ocho meses después; que la deman-
dante trataba a Planellas de papá y éste a ella de hija; que
Planellas la llevó a vivir a casa de Pablo Asencio hasta que
se casó.  En la repregunta declaró que cuando Planellas re-
gresaba a Cayey no venía solo con la niña en el quitrín, sino
que venía acompañado de un cochero; que no recuerda la
fecha exacta en que Planellas trajo la niña a Trujillo, pero

que fué como seis u ocho meses antes de casarse con doña Tula y antes de llegar los americanos a Puerto Rico.

Epifania Díaz declara que tiene cincuenta años; que vive en Trujillo Alto; que a la edad de 10 años fué a vivir a la casa de Manolo Planellas ya casado con Tula Pastrana y con un hijo, donde ya estaba María Planellas; que allí ella (la testigo) trabajaba como sirvienta; que María tenía cuarto y cama y comía en la mesa con los dueños de la casa; que Planellas tenía a María como a su hija, ella diciéndole a él "papá" y a su esposa "madrina"; que Planellas y su esposa tenían un hijo que murió como de dos años; que no tuvieron otro hijo, pero se trajeron un sobrino a vivir con ellos; que María ayudaba a cuidarlo; que ella era mucho mayor que María.

Hilaria Rivera declara que tiene 65 años; que era vecina de Planellas y su esposa, a quienes conocía bien; que se recuerda cuando la niña María Planellas como de tres años vino a vivir con ellos; que María dormía en un cuarto al lado del del matrimonio y comía en el comedor; que le decía "papá" a Planellas y "madrina" a doña Tula.

Ramona González declara que hace 30 años que conoce a María Planellas, la demandante; que fué vecina de Manuel Planellas en el Condado; que en esa fecha María vivía con Planellas, de quien "según se decía ella era hija"; que después, cuando vivían en San Juan, Planellas le pidió a la mamá de la testigo que se hiciera cargo de María durante un tiempo, pues le traía disgustos con su esposa; que Planellas ofreció pagarle a su mamá por tenerla pero no le admitió nada; que su madre tuvo a María en su casa como dos años, en concepto de una hija también; y que Planellas iba semanalmente a su casa a llevarle dinero a su hija; que eso ocurrió hace como 30 años; que después Planellas se llevó a su hija no sabe para dónde.

Matías Hernández (mujer) declara que tiene más de 70 años de edad y su esposo Pablo Asencio era amigo de Ma-

nuel Planellas; que Planellas llevó una niña llamada María Planellas a su casa en el Barrio Carraizo, en Trujillo Alto, dejándola allí dos o tres meses; que Planellas les dijo que la niña (sañalando a la demandante) era hija de él; que eso ocurrió en tiempos de los españoles; que Planellas iba a ver a la niña, la cogía y la besaba y trataba como su hija; que la niña tenía como dos o tres años y luego se la llevó. En la repregunta declaró que Planellas llegó una mañana a caballo con la niña en su falda; que su esposo murió; que a su casa no se podía llegar en coche sino a caballo.

Francisco Nieves declara que tiene 60 años de edad y es carpintero; que después de la invasión, fué a Trujillo al Barrio de Carraizo para arreglarle unos muebles a Manuel Planellas; que en la casa de Planellas vivían entonces su esposa, una niña de ocho o diez años y una cocinera; que la niña le decían Mariíta y le decía "papá" a Planellas y "madrina" a su esposa doña Tula; que Planellas cogía a la niña y la besaba. En el contrainterrogatorio declara que estuvo cińco o seis días en Carraizo trabajando; que sabe que la demandante es aquella niña que vió en Carraizo porque la conoció a ella en Santurce después, en 1910, y posteriormente la ha visto varias veces, porque trabajó con su esposo, Mauricio Verdejo.

Antonio Negrón declara que fué amigo de Planellas; que siendo dependiente de un colmado en Santurce, de don Fernando Freyre Somohano, Planellas le dijo al dueño que le despacharan a María Planellas todo lo que ella pidiera, pues era hija de él; que María iba a buscar compras allí semanalmente; que Planellas siempre las pagaba. Esto ocurrió en los años 1915, 1916 y 1917.

Mauricio Verdejo declara que es esposo de la demandante; que el padre de su esposa se llamaba Manuel Planellas; que antes de casarse en el año 1912 obtuvo el consentimiento de Planellas; que sus hijos le decían "abuelo" a Planellas sin que éste protestara; que su esposa le decía

"papá" y Planellas a ella hija; que después de casados, Planellas estuvo en su casa como seis o siete veces; que él es carpintero y trabajó en la casa de Planellas en Santurce.

María Planellas declara que tiene 49 años de edad; que su padre es Manuel Planellas; que ella vivió con él y le decía "papá"; que Planellas estaba casado con doña Tula Pastrana y ella le decía "madrina"; que Planellas tuvo un disgusto con su esposa cuando ella tenía como catorce años, porque un día trató de atropellarla y la quemó en la cara; que cuando ella era pequeña la trataba bien; que ella tenía su habitación y comía en el comedor con ella; que estuvo viviendo con su padre hasta la edad de 19 ó 20 años, pero entonces, porque su madrina la maltrataba, le dijo a su papá le buscara dónde ir y se fué a vivir con una vecina, la Sra. Antonia González, cuando ésta se fué a vivir a San Juan; que ella no ha tenido otro nombre que el de María Planellas; que su padre siempre la trataba bien y la ayudaba, costeándole todos sus gastos y teniéndola como una verdadera hija; que ella no era sirvienta de la casa por cuanto era hija; que su papá le dijo que cuando vino de Cayey la había llevado a casa de Pablo Asencio y después a casa de María Luisa, la madre de doña Tula, y al padre de ésta le decía papá Jacinto. En la repregunta declaró que Planellas siempre le decía que era su hija y siempre usó su apellido; que su papá le dijo que su santo y cumpleaños era el 11 de septiembre; que desde los cuatro o cinco años vivió con Planellas y su esposa; que vivió en Carraizo con ellos pero no recuerda cuándo vivió en Quebrada Negritos porque era muy pequeña; que en Carraizo estuvo Epifania Díaz de sirvienta y Manuela Flores de lavandera; que la demandada la enseñó de todo y ella trabajaba y ayudaba; explica que la demandada la quemó con un cuchillo que ella estaba limpiando con ceniza caliente y su papá cuando llegó la vió quemada y tuvo un disgusto con la demandada; que un practicante la curaba todos los días; que cuando no había sirvienta su madrina y ella lo ha-

cían todo; que conoce a Ismael un hijo de crianza y sobrino de la demandada pero ella no lo cuidaba porque los dos eran niños; que antes de casarse con Verdejo ella habló con su padre y él le dijo que no estaba de acuerdo con que se casara con una persona trigueña, pero luego accedió aunque no estaba conforme.

Hasta aquí la prueba de la demandante.

La de los demandados consistió en la declaración de los testigos María Planellas, demandante, Eustaquia Vázquez (testigo principal de la demandante), Dr. Manuel V. del Valle, Antonio Pereira, Manuela Flores, Francisco del Valle, Ramón Monge, Josefa Santi de Fernández, Félix Díaz, Rafael Font Suárez y la de la demandada María Tula Pastrana.

La demandante María Planellas repitió, más o menos, lo mismo que había declarado anteriormente pero agregó que según referencia de su papá un tal Pancho Monge fué quien la trajo de Cayey, aunque también dice que fué su papá, Pablo Asencio y él pero que ella no recuerda nada de eso porque era muy pequeña; que la demandada es su madrina porque la confirmó en la iglesia de Río Piedras; que su papá la visitó muchas veces después de ella casarse y conoció a sus nietos; que no supo de su enfermedad y vino a saber de su muerte la noche que lo enterraron.

Eustaquia Vázquez, que ya había declarado como testigo de la demandante, declara que tiene 75 años de edad y ha residido siempre en Cayey; que conoció a Eduvigis Díaz madre de la demandante; que Eduvigis murió a los dos años de nacer la demandante y ésta quedó con una tía; que conoció a Manuel Planellas que le escribía desde Nueva York, pues tenían amistad cuando él era dependiente de una tienda; que Planellas le mandaba dinero en billetes para Eduvigis pues la había dejado encinta; que Planellas se fué dos veces de Cayey y fué la última vez que le escribía de Nueva York; repite que Planellas fué a buscar a la demandante a Cayey en una calesa con cochero y de un caballo; que no conoce a Pancho Monge.

El Dr. Manuel V. del Valle declara que conocía íntimamente a Manuel Planellas, pues era sobrino de la esposa de su hermano Francisco; que estando él en Nueva Orleáns en casa de los Chevremont llegó Planellas a estudiar y luego estudiaron juntos en Cecil College, en Kentucky, *desde abril de 1887 hasta el mes de junio de 1888,* en que se graduó el testigo del curso comercial de dicho Colegio y se marchó a Detroit para estudiar en la Universidad de Michigan, *no volviendo a ver a Planellas hasta que regresó a Puerto Rico en julio de 1891;* que durante su estadía en Cecil College, fueron compañeros de cuarto Planellas y él y por eso puede asegurar que Planellas estuvo en Kentucky sin interrupción *desde abril de 1887 hasta junio de 1888.* En la repregunta declaró que cuando él volvió de Estados Unidos Planellas vivía en Trujillo Alto.

Antonio Pereira declara que tiene 67 años de edad; que conoció a Manuel Planellas en San Juan en el 1884 cuando los dos eran estudiantes; que en 1886 Planellas fué a verlo un día para despedirse porque se iba para los Estados Unidos, y después lo volvió a ver en el año *1890* en Trujillo Alto.

Manuela Flores declara que tiene 58 años de edad y vive en Río Piedras; que fué la lavandera y sirvienta de los esposos Planellas-Pastrana cuando éstos vivían en Carraizo; que no tenían ninguna otra sirvienta; luego dice que María Planellas, la demandante, también trabajaba en la casa como sirvienta, atendiendo a Ismael, el sobrino que Planellas adoptó, y haciendo la limpieza; que María tenía once años y le decía "Don Manolo" a Planellas y "Doña Tula" a su esposa, y ellos a ella María; que después de eso, cuando Planellas vivía en el Condado, ella (la testigo) aunque no estaba colocada con la familia, venía a veces a la casa y allí veía a María cocinando y limpiando. En la repregunta declaró ser comadre de la demandada y que María fué llevada a casa de Planellas por un tal Domingo Monge; que después de dejar de servir en Carraizo, seguía yendo a casa de Plane-

llas porque una hija de ella, llamada Paulina Flores, trabajaba allí como sirvienta.

Francisco del Valle declara que tiene 59 años de edad, y es primo hermano de Manuel Planellas; que tuvo trato íntimo con Planellas cuando éste vivía con su esposa en Santurce alrededor del 1906 al 1907; que conoció a una muchacha llamada María mientras trabajaba allí como sirvienta, que María llamaba a Planellas "Don Manolo" y a su esposa "Doña Tula", y algunas veces "madrina"; que nunca la oyó llamar a Planellas papá.

Ramón Monge declara que tiene 65 años de edad y es residente de Trujillo Alto; que conocía a los esposos Planellas-Pastrana y asistió a la boda de ellos en Trujillo; que tenía un hermano llamado Francisco que vivía en el pueblo de Trujillo Alto con una querida; que su hermano que era jugador de oficio salió un día a jugar gallos y trajo de Cayey una niña llamada María y la tuvo viviendo con él como dos meses; que mientras estuvo allí, Planellas nunca fué a verla; que después de dos meses la niña se fué a vivir a casa de Pepe Asencio en el Bo. "Dos Bocas"; que de acuerdo con su criterio, cuando la niña vino de Cayey, tenía como 4 ó 5 años; que la niña llegó a Trujillo como dos años antes de casarse Planellas con doña Tula.

Josefa Santí de Fernández declara que en el 1908 pasó como cinco meses en la casa de Planellas en Santurce con motivo de un tratamiento a que la sometió el Dr. Ashford, pues ella entonces vivía en Caguas; que había una sirvienta llamada María de quince o dieciocho años; que dicha sirvienta le decía "Don Manuel" a Planellas y *madrina* a doña Tula; que María cocinaba y ayudaba en todos los oficios de la casa; y que no había ninguna otra sirvienta o criada.

Félix Díaz declara que cuando tenía 12 años fué peón en casa de Planellas en Trujillo Alto cuando era soltero; que vió a la niña en casa de Pancho Monge y luego se la dió a

Asencio, y añade que después de estar en casa de Asencio, la niña, llamada María, fué a casa de doña Luisa Cortés, madre de doña Tula, y después, cuando doña Tula tuvo su propio hijo, vino a casa de Planellas a ayudarle a cuidar el niño; que María tenía entonces cinco o seis años. Declaró además que en la casa de Planellas, María recibía el trato de una sirvienta y comía en el sitio asignado a los peones.

Rafael Font Suárez declara que conoció a Manuel Planellas y su esposa, hacia el 1907; que tenía un colmado y los esposos Planellas–Pastrana tenían una cuenta abierta en su establecimiento; mandaban una sirvienta como de 15 a 16 años, llamada María, a hacer la compra y que otras veces iba el niño Ismael Planellas; que María llamaba a Planellas "Don. Manolo" y a doña Tula "madrina".

María Pastrana Vda. de Planellas en su declaración hizo una relación detallada de su vida matrimonial con Manuel Planellas; sostiene que la niña, María, trabajaba en su casa en Carraizo como sirvienta, barriendo y ayudando a la testigo en la cocina; que también tenían otra sirvienta llamada Epifania; que en el 1902 María volvió de nuevo a su casa para ayudar a cuidar a Ismael, el sobrino que Planellas y la testigo habían llevado a la casa, y se quedó hasta 1904, siempre en el mismo carácter de sirvienta; que después volvió de 16 años, cuando Planellas y ella vivían en el Condado, para trabajar como cocinera; que la llamaba "madrina" porque ella (la testigo) la llevó a confirmar allá por el año 1900; que María se fué otra vez alrededor del 1910; que a Ismael lo adoptaron en el año 1920; que cuando la última enfermedad de Planellas, María nunca fué a verlo; que siempre que iba de su finca, en el Bo. Carraizo de Trujillo a Río Piedras, iba a caballo y que creía que no se podía ir en coche, pues los caminos eran malísimos; que su marido no tenía coche y que no había ninguno en el pueblo; que nunca tuvo que arreglar sus muebles, pues los compró cuando se

casó y eran todos fuertes y nuevos; que el carpintero Francisco Rivera nunca estuvo en su casa arreglando muebles.

Como prueba de *rebuttal* la demandante presentó el testimonio de los testigos Jesús Benítez Castaño y Enrique Umpierre para refutar la afirmación de la demandada de que no se podía ir en coche de Trujillo a Río Piedras para la época en que por primera vez vivieron los Planellas en el Bo. Carraizo de Trujillo, declarando Benítez Castaño que para el año 1892 se podía ir en coche por un camino vecinal de Trujillo a Río Piedras, aunque se transitaba más a caballo y en burros que en coche, y Umpierre que él fué el contratista que hizo el trozo de carretera de Trujillo a Carraizo y que pasó *trucks* con materiales y el cilindro por el paso del Río Grande de Loíza en esa carretera, pero que eso fué en 1932, y antes de esa fecha no conocía ese camino.

Además de la prueba testifical se ofreció también evidencia documental consistente en una certificación negativa de la inscripción de María Díaz; el acta de matrimonio de Manuel Planellas Muñoz con María Tula Pastrana celebrado en Trujillo Alto el primero de abril de 1893; el acta de nacimiento de Manuel Ignacio Planellas Muñoz ocurrido en 16 de marzo de 1867 y además dos certificaciones del Comisionado del Interior de Puerto Rico en cuanto al estado de ciertos caminos que conducen al Municipio de Trujillo Alto.

En el transcurso del juicio las partes estipularon que don Román Baldorioty de Castro falleció el día 30 de septiembre de 1889 y así mismo están contestes en que habiendo nacido la demandante en dicho año, este caso debe regirse por la Ley 11 de Toro cuyo texto dice así:

"E porque no se pueda dubdar cuáles son fijos naturales, ordenamos é mandamos que entonces se digan ser los fijos naturales, cuando al tiempo que nascieren o fueren concebidos, sus padres podían casar con sus madres justamente, sin dispensación, con tanto que el padre lo reconozca por su fijo, puesto que no haya tenido la muger de quien lo ovo en su casa, ni sea una sola: ca concurriendo en el fijo las calidades susodichas mandamos que sea fijo natural."

■ No hay discusión tampoco entre las partes en cuanto a que los requisitos exigidos para que un hijo pueda establecer su filiación bajo dicha ley son los siguientes:

1. Haber nacido de padres que al tiempo de la concepción o del nacimiento podían casarse válidamente sin dispensa, y

2. Que fué reconocido por el padre, expresa o tácitamente.

Sin embargo, la demandante amplía su teoría sosteniendo que la Ley 11 de Toro no derogó totalmente las disposiciones de la Ley de Partidas y que, los que eran hijos naturales bajo dicha ley siguen siéndolo bajo la Ley 11 de Toro y cita varios comentaristas al efecto de que probado el hecho de que los padres vivían en concubinato eso basta para dejar establecida la condición de hijo natural sin necesidad de tener que probar actos de reconocimiento por parte del padre. En otras palabras, que la prueba del concubinato, por sí, es una prueba tácita de reconocimiento. Cita la demandante para sostener su teoría el caso de *Castro* v. *Solís,* 19 D.P.R. 678.

En el caso de *Solís,* supra, la demandante sostenía que ella no estaba ejercitando la acción de filiación, por entender que habiendo ella nacido durante el concubinato público de su madre con Solís y en la casa de éste cuando ambos podían contraer matrimonio, adquirió el estado de hija natural reconocida de dicho señor y por tanto, su acción se limitaba a reclamar su cuota hereditaria. Y este Tribunal resolvió lo siguiente:

"Si bien en el derecho romano era indispensable que la concubina viviera en la casa del concubinario y por ello el hijo nacido en tales condiciones tenía la presunción de ser hijo natural del concubinario, requisito que las leyes de partidas no exigían expresamente, sin embargo, al extender la ley 11 de Toro el beneficio de la naturalidad a los hijos de mujeres que no fueran propiamente concubinas, *borró la presunción que antes existía para los nacidos de concubinas y desde entonces es requisito indispensable para que el hijo tuviera el concepto de natural que el padre le reconociera, expresa o tácitamente.* Por consiguiente, el mero hecho de que la demandante

*naciera* en la casa de Joaquín Leandro Solís Kercado cuando éste tenía en su casa como concubina a la madre de la apelante no es por sí solo bastante para darle el estado de hija natural que aun en el derecho anterior a la ley de Toro, sólo establecía una presunción, y por tanto sujeta a la prueba de que los hechos de que dimanaba fueran ciertos, por lo que aun entonces era necesario acreditarlos ante los tribunales, para que como consecuencia de ellos se hiciera la declaración de ser hijo natural, lo que equivalía a ejercitar la acción de filiación. *En el derecho de la citada ley de Toro tales hechos implicarían un reconocimiento tácito del padre, pero sujetos al juicio de filiación.* De todos modos, ya esos hechos se consideren como presunción del estado de hija natural, como entiende la apelante, *o sirvan para probar el reconocimiento tácito, como entendemos nosotros, no tienen otro alcance que el de servir de prueba de la acción de filiación....''* (Itálicas nuestras.)

En el caso de *Ramírez et al.* v. *Ramírez et al.,* 30 D.P.R. 617, se citó con aprobación el de *Castro* v. *Solís,* supra, y se resolvió, según tomamos del resumen:

"La Ley 11 de Toro no establece diferencia entre los hijos naturales e incluye a los nacidos en concubinato y esa ley tampoco supone que un hijo nacido de padres que vivían juntos públicamente como marido y mujer tiene un estado legal establecido *sin la necesidad de una acción de filiación.''* (Itálicas nuestras.)

Véase la Sentencia del Tribunal Supremo de España de 25 de enero de 1865, citada en el caso de *Ramírez,* supra, al efecto de que la Ley de Toro era aplicable al reconocimiento de una hija nacida de una concubina que vivía en la casa del padre natural y confirmó el fallo de la sala inferior que declaró que siendo la madre manceba del padre la hija no necesitaba de reconocimiento alguno por parte de su padre.

En Louisiana se ha interpretado la Ley 11 de Toro en igual forma en el caso de *Lange* v. *Richoux,* 6 La. 560 en el que se dijo:

"The 11th law of Toro required that to be regarded as natural children, there should have existed at their birth no legal impediment to the marriage of the parents and that they should be acknowledged by the father, *dispensing however with any formal acknowledgement when the mother lived in the same house with the father and was*

*his concubine.* Under this law it was considered by the ablest commentators that proof of birth was equivalent to acknowledgement on the part of the mother, *and proof of cohabitation with the mother as sole concubine tantamount to an acknowledgement of paternity.*''

Llamas y Molina en sus *Comentarios de las Leyes de Toro,* al comentar la Ley 11 (vol. 1 pág. 251) se expresa en cuanto a este particular que discutimos así:

"Por último exige la ley por condición precisa que el padre reconozca al hijo suyo para que se declare por natural. Este requisito no lo pedía el derecho romano, ni era necesario, pues habiendo de vivir la concubina en la casa del concubinario, obraba la presunción a favor del hijo de que éste era. Como la ley de Toro extendió el beneficio de la naturalidad a los engendrados de mujeres que los padres tenían fuera de su casa, cesó la presunción que inducía al derecho romano, y fué necesario en su lugar establecer el reconocimiento del padre, como lo observa el señor Covarrubias, parte 2 de matrimonio, cap. 8, párrafo 4, número 44; *de que se infiere que estando la mujer en la casa del padre no sería preciso este reconocimiento.*" (Itálicas nuestras.)

Es interesante la cuestión y bien quisiéramos disponer del tiempo necesario para seguir y ampliar el estudio de la misma a través de otros comentaristas que nos cita la demandante. Sin embargo, somos de opinión, que con lo expuesto basta para dejar demostrado que tiene razón la demandante al sostener que una de las formas en que puede probarse el reconocimiento tácito por parte del padre es cuando se prueba que éste vivía en concubinato en la misma casa con la madre al tiempo de la concepción o del nacimiento del hijo.

Sostiene la demandante que su prueba demostró el concubinato de Manuel Planellas con Eduvigis Díaz y que probado ese hecho sería suficiente para declarar a la demandante hija natural reconocida de Planellas, pero que, si esto no fuera así, la prueba demostró además actos de reconocimiento expresos y tácitos por parte de Planellas. Creemos que tiene razón la demandante y que la corte inferior cometió manifiesto error al apreciar la prueba y resolver que no sostenía las alegaciones de la demanda.

Hemos resumido toda la prueba del caso, y ésta demuestra, a nuestro juicio, que Manuel Planellas cuando estaba en Cayey si no vivió en concubinato con Eduvigis Díaz sostuvo relaciones amorosas con ella, y que al salir él por segunda vez de Cayey para Estados Unidos dejó encinta a Eduvigis y que la niña María Planellas, fruto de dichos amores, es la hija, de Planellas. La declaración del Dr. Manuel V. del Valle en que se basa la parte demandada y la corte inferior para sostener que Planellas estaba en Estados Unidos cuando Eduvigis salió encinta, no probó tal cosa, a pesar de que dicho testigo no hay duda alguna que declaró verazmente y merece entero crédito. La testigo de la demandante, Eustaquia Velázquez, que también lo fué de los demandados y por tanto les obliga en todo cuanto a ellos le declaró dijo terminantemente que Planellas salió de Cayey para Estados Unidos dos veces y que fué en la segunda vez que se fué que dejó a Eduvigis encinta y le mandaba dinero desde los Estados Unidos, y que la niña nació allá para el día del entierro de Baldorioty de Castro el 30 de septiembre de 1889. Esta testigo fué corroborada por Sotero Colón que fué más explícito y declaró que Planellas le puso una casa a Eduvigis a la salida de la carretera de Cidra y allí la tenía de querida. Esta prueba no fué controvertida en ninguna forma por la de los demandados. Tomando como base el mes de septiembre de 1889 en que nació la demandante, la concepción tuvo que tener lugar, a lo más, diez meses antes o sea en diciembre de 1888. ¿Qué nos dice el Dr. del Valle en cuanto a la estadía de Planellas con él en Cecil College? Que Planellas llegó a Nueva Orleans en marzo o abril de 1887 y luego pasaron juntos a Cecil College donde estuvieron ambos hasta el mes de junio de 1888 en que el Dr. del Valle se fué para Michigan a estudiar y no volvió a ver a Planellas hasta que regresó a Puerto Rico en el año 1891. De manera, que ni el Dr. del Valle, ni ningún otro testigo de los demandados nos dicen dónde estaba Planellas desde junio a diciembre de

1888. El hecho de que el Dr. del Valle lo dejara en Cecil College en junio de 1888 no establece presunción alguna de que continuara allí indefinidamente. Asumiendo, sin embargo, que existiera esa presunción fué controvertida por la prueba de la demandante al efecto de que Planellas estuvo en Cayey con posterioridad a junio de 1888 y sostuvo relaciones amorosas con Eduvigis Díaz, la dejó encinta y se fué de nuevo para los Estados Unidos. El testimonio del Dr. del Valle no contradice el de Eustaquia Vázquez y Sotero Colón en cuanto a que Planellas estuvo en Cayey y sostuvo relaciones amorosas con Eduvigis Díaz y la dejó encinta cuando se volvió a ir para los Estados Unidos. Las declaraciones de los testigos de los demandados Francisco del Valle y Antonio Pereira tampoco contradicen las de los testigos de la demandante antes mencionados, pues el primero se limitó a decir que conoció a Planellas más íntimamente después que regresó de los Estados Unidos y después de casarse cuando vivían en el Condado, en el año 1906; y el segundo, que lo conoció en el año 1884, que en 1886 se despidió de él y no lo volvió a ver hasta el 1890 en Trujillo Alto.

Nada hay en la prueba de la demandada que tienda a desacreditar las declaraciones de Eustaquia Vázquez y Sotero Colón. Sus testimonios, en cuanto a las relaciones amorosas de Planellas y Eduvigis no fueron contradichos en forma alguna y debieron merecer crédito a la corte inferior, ya que la versión que ellos dieron no es físicamente imposible o inverosímil, ni incurrieron en contradicciones que los hicieran indignos de crédito. *Navarro* v. *Compañía Azucarera "El Ejemplo"*, 53 D.P.R. 726; *Caballero* v. *González,* 53 D.P.R. 539. En la opinión que dictó la corte inferior en apoyo de su sentencia, lo único que dice en cuanto a este aspecto del caso es lo siguiente:

"Las partes estipularon, y así consta del récord, que la demandante nació en el pueblo de Cayey el 30 de septiembre de 1889, a las ocho de la noche, y tal fecha se pudo precisar por la declaración de Eustaquia Vázquez. También testificó en cuanto al nacimiento,

Sotero Colón, si bien contradice la declaración de Eustaquia Vázquez en cuanto a las fechas de las relaciones maritales entre Manuel Planellas Muñoz y Eduvigis Díaz.''

''La demandante hace gran hincapié en la doctrina establecida por el Tribunal Supremo en el caso de *Colón* v. *Sucn. Tristani,* 44 D. P.R. 171, en cuanto al sentido liberalizador que en acciones de filiación establece dicha doctrina. 'Una vez establecidas las relaciones amorosas ilícitas surge la presunción legal de la paternidad y sería injusta la ley que una vez que se haya demostrado que existe un padre no facilite los medios de obligarle a asumir las responsabilidades contraídas con el hijo que engendró.' De acuerdo enteramente, pero es que aquí en este caso que estamos analizando, por muy amplia y liberal que pueda ser la mente del juzgador, *no puede precisarse con exactitud la fecha del nacimiento de María y más aun hay una gran contradicción en cuanto a si para la presunta fecha en que se alega naciera, estaba el padre en Puerto Rico,* ya que la prueba debe ser considerada por el juzgador en todas sus partes y no desechar caprichosamente alguna prueba a fin de darle eficacia a algún testimonio que pueda favorecer la teoría de la demandante. Se hace innecesario que yo haga un análisis completo de toda la prueba.'' (Itálicas nuestras.)

Del examen que hemos hecho de las declaraciones de Eustaquia Vázquez y Sotero Colón y que hemos resumido anteriormente, no aparece la contradicción a que hace referencia la corte inferior. La Vázquez dijo que Eduvigis Díaz, madre de la demandante y Planellas llevaban relaciones amorosas de las que nació la demandante alrededor de la fecha de la muerte de Baldorioty, septiembre de 1889; y Sotero dijo que en los años 1888 y 1889 Planellas se quería con Eduvigis Díaz, primero en una casa que le puso a la salida de la carretera de Cidra y luego en otra que le puso frente a una panadería. No puede sostenerse que no se precisara con exactitud la fecha del nacimiento de la demandante. Tampoco existe lo que la corte inferior llama ''gran contradicción en cuanto a si para la presunta fecha en que *nació,* estaba el padre en Puerto Rico''. Es un hecho admitido que Planellas no estaba en Puerto Rico cuando *nació* la deman-

dante y, como hemos dicho antes, la demandada no controvirtió la prueba de la demandante en cuanto a que sí lo estaba desde junio de 1888 hasta principios de 1889. [3] Además, la demandada al presentar a Eustaquia Vázquez y a la demandante como testigos suyos está impedida de atacar su credibilidad por el mero hecho de que sean partes interesadas. *Morales* v. *Díaz,* 24 D.R.R. 740; *Quintana Reyes* v. *Lejeune,* 37 D.P.R. 733.

■ Somos de opinión que las relaciones amorosas de Planellas con Eduvigis Díaz quedaron probadas. El hecho de que la demandante naciera estando Planellas en los Estados Unidos en septiembre de 1889 no tiene importancia alguna. La Ley 11 de Toro, supra, no requiere que el padre a la fecha de la concepción o del nacimiento viviera junto con la madre, sino que pudieran contraer matrimonio sin dispensa y aquí se probó que ellos eran solteros. Tampoco requiere dicha ley que la madre haya vivido con el padre en el mismo hogar ni que sea una sola mujer la que haya tenido, aunque el hecho de que hayan vivido en concubinato no hace inaplicable dicha ley según hemos visto por las autoridades antes citadas, sino que hasta hace innecesario el reconocimiento, o como dice Llamas y Molina "no sería preciso este reconocimiento".

■ Pero es que en el caso de autos se probaron, a nuestro juicio, actos de reconocimiento expresos de Planellas, que establecen el estado de hija natural suya de la demandante. El primero es el que se refiere al hecho de haberla ido a buscar a Cayey para llevarla a Trujillo Alto. La corte inferior, en cuanto a este importante incidente, dice en su corta opinión:

"Aceptando para los fines de esta argumentación que María Díaz sea la misma persona nacida en Cayey de acuerdo con la declaración de Eustaquia Vázquez, la cuestión que surge y que crea en la mente del juzgador cierta ansiedad por resolver, es la pregunta que se hace muy bien por los demandados en su alegato: ¿Quién trajo a la niña de Cayey a Trujillo Alto?

"Según los testigos de la demandante, la trajo el mismo Planellas y según los testigos de los demandados la trajo Pablo Monge. Ahora bien, las declaraciones de estos testigos que hablan sobre el viaje de María desde Cayey a Trujillo Alto ni la misma declaración de Ramón Monge satisfacen la conciencia del juzgador a tal extremo que pueda precisar con absoluta certeza cómo llegó María a Trujillo Alto. Esta es una de las lagunas, por decirlo así, de que adolece esta prueba y que más me han hecho especular *sin que haya podido encontrarle una conclusión correcta y exacta,* no obstante haber leído las declaraciones de los testigos varias veces y haber seguido con interés el análisis que de esta prueba hacen las partes en sus bien documentados alegatos." (Itálicas nuestras.)

Basta con analizar serenamente la prueba presentada para ver que sí se puede dar una contestación correcta a la pregunta que se hizo la corte inferior. Frente a la prueba directa de los testigos de la demandante, Eustaquia Vázquez, Regino Rivera, Sotero Colón y Matías Hernández, que afirman que fué Planellas quien fué a buscar a la niña a Cayey y la trajo a Trujillo Alto y la dejó unos meses en casa de José Asencio (esposo de Matías Hernández) para llevarla después a casa de la madre de la demandada y luego a su propia casa, sólo está la declaración de Ramón Monge, quien dice que fué su hermano Pancho quien la trajo a Trujillo y luego se la dió a Asencio. Esta declaración de Monge está no sólo en abierta contradicción con la de los testigos de la demandante, sino que no dá explicación lógica alguna del motivo que tuvo su hermano Pancho, jugador de oficio, para traer a la niña de Cayey, quién era ella, de dónde la sacó, por qué se la dió a Asencio, etc. En el extenso contrainterrogatorio a que fué sometido Ramón Monge, por lo general contestaba que no recordaba o que no sabía. No da buena impresión su testimonio en verdad, y si lo confrontamos a la lógica explicación que dan los testigos de la demandante al hecho de haber sido Planellas, como padre que era de ella, quien fué a buscar a la niña a Cayey y la trajo a Trujillo Alto, hay que convenir con la demandante en que la corte inferior cometió también manifiesto error al apreciar la prueba en cuanto a este par-

ticular al igual que en cuanto a la prueba de las relaciones amorosas, según demostramos anteriormente. Y fué fundándose en estos dos aspectos del caso, principalmente, que la corte inferior declaró sin lugar la demanda. Lo único que hace constar en su opinión, en cuanto al resto de la prueba presentada, que se refiere a los años en que la demandante vivió en la casa de Planellas en distintas épocas, es lo siguiente:

"Nada hay en esta prueba que indique que Manuel Planellas fuese un hombre que eludiese sus compromisos y es inexplicable la conducta de un hombre que aceptando el hecho del viaje de Cayey a Trujillo Alto para buscar a su hija, *que realice los actos que la demandante le atribuye al perder a su hijo, adopte a un sobrino de su esposa prescindiendo por completo de su hija María* y lo que es más grave aún que haya llevado a ésta a vivir a la propia casa de su esposa recién casada y que la esposa se diese cuenta de las relaciones paterno-familiares para con María. Toda esta prueba me está sumamente sospechosa y no deja en mi ánimo esa certeza moral que satisface la conciencia del juzgador." (Itálicas nuestras.)

El hecho de que Planellas adoptara al sobrino de la demandada en el año *1920,* según declaró la propia demandada, en nada puede afectar la resolución del problema planteado en este caso; es decir, si Planellas más de treinta años antes de esa fecha tuvo relaciones amorosas con Eduvigis Díaz de cuyas relaciones nació la demandante y si Planellas realizó o no actos, expresos o tácitos, de reconocimiento de su hija. Tampoco el hecho de que la demandante fuera llevada a vivir a casa de la demandada recién casada con Planellas es suficiente pra no dar crédito a la prueba de la demandante, si nos fijmos que según el acta de matrimonio de la demandada ésta tenía 15 años de edad cuando se casó. Además ya Planellas había realizado actos de reconocimiento y también los había realizado con anterioridad de haber fallecido el hijo que la demandada tuvo con Planellas.

Nada hay en la Ley 11 de Toro que exija que sean varios los actos de reconocimiento por parte del padre para que la

corte pueda resolver que ha quedado establecido el estado de hijo natural reconocido. Son tan liberales sus preceptos que admiten el reconocimiento expreso o tácito. El acto de ir Planellas a buscar a su hija a Cayey y traerla a Trujillo Alto por sí solo constituye un acto de reconocimiento suficiente. Pero la prueba demostró, a nuestro juicio, muchos actos más de reconocimiento a través de los años, tanto antes como después de haber ido la demandante a vivir con su padre. No estamos ante un caso en que se requiere prueba de que el hijo se halla en la posesión continua del estado de hijo natural justificada por actos del padre, según requiere el artículo 125 del Código Civil vigente. Eso no obstante, en el caso de *Colón* v. *Sucn. Tristani,* 44 D.P.R. 171, 181, que fué un caso bajo este precepto legal, este Tribunal resolvió que la interpretación que debía darse a la palabra ''continuo'' es la siguiente:

''*...En nuestro concepto la palabra 'continuo' debe interpretarse en el sentido de referirse a una serie de actos, a un conjunto de hechos ejecutados por la persona de quien se reclama el reconocimiento, y que sean bastantes, al examinarlos en globo, para constituir la posesión del estado de hijo natural. Una vez que esta serie de actos se ha realizado por un período razonable de tiempo, el padre no debe estar autorizado para revocar por sus actuaciones posteriores el reconocimiento que antes hizo....*'' (Itálicas nuestras.)

Al referirse a la Ley 11 de Toro en dicho caso de *Colón* v. *Sucn. Tristani,* se dice:

''De acuerdo con la Ley 11 de Toro el reconocimiento podrá ser expreso o tácito. El hijo podrá investigar su origen, siendo lícitos todos los medios de prueba inquisitivos de la paternidad.''

Y aplicando la doctrina que debe prevalecer cuando se pueda investigar la paternidad se dijo, a la página 182:

''...Pero cuando puede establecerse la naturalidad del hijo *mediante prueba de la investigación de la paternidad,* una vez que el tribunal juzgador considera probado este hecho, *la discreción judicial debe ser humana, juiciosa y liberal, sin salirse del marco de la ley, para que el hijo encuentre viable el camino de hacer efectivo*

*el deber de reconocerle que su padre contrae al engendrarlo y de exigir los derechos inherentes a su filiación. La paternidad es un elemento del cual no puede prescindir el juzgador, cuando se ha presentado prueba al efecto, para llegar a una conclusión. . . ."* (Itálicas nuestras.) ·

Somos de opinión que habiéndose cometido por la corte inferior los dos errores imputados *debe revocarse la sentencia apelada y dictarse la que debió dictar dicha corte declarándose, como se declara, con lugar la demanda, y en su consecuencia declarar que la demandante María Planellas Díaz es hija natural reconocida de Manuel Planellas Muñoz, ordenando que se inscriba tal reconocimiento en el Registro Civil correspondiente, con costas a la demandada.*